[No. 26539. *En Banc.* November 15, 1937.]

THE STATE OF WASHINGTON, *on the Relation of Yakima Amusement Company et al., Appellants,* v. YAKIMA COUNTY *et al., Respondents.*[1]

[1]Reported in 73 P. (2d) 759.

*Cheney & Hutcheson, Walter J. Robinson, Jr.,* and *Allen & Wilkins,* for appellants.

*Robert J. Willis* and *Don M. Tunstall,* for respondents.

MILLARD, J.—The relators, owners of the property in question, instituted this proceeding to restrain the Yakima county board of equalization from proceeding in the matter of increasing the assessed valuation of an unfinished hotel structure on the relators' property, and to obtain, as applied to a situation presented by the facts herein, a declaratory judgment as to the validity of subd. 5, § 1, chapter 15, Laws of 1931, p. 57 (Rem. Rev. Stat., § 11091 [P. C. § 6874-5]). Respondents' demurrer to the relators' second amended and supplemental application for writ of prohibition and for declaratory judgment was sustained by the trial court, which expressed the view that the challenged statute

". . . would not be unconstitutional in so far as it gives the said tax commission a right to reconvene the board [county board of equalization] for the purpose of considering an increase in valuation."

The relators appealed from the judgment of dismissal following the sustaining of the demurrer.

The facts are as follows: The assessor of Yakima

county assessed the unfinished hotel structure upon appellants' land in Yakima as of the value of ten thousand dollars, as of March 1, 1935. Pursuant to the statutory (Rem. Rev. Stat., § 11220 [P. C. § 6882-68]) requirements, the county board of equalization convened Monday, July 1, 1935. The matter of the assessment of relators' property was considered by the board, which decided that the question of the reassessment of the property should be brought before the county board for consideration in the regular way.

On July 5, 1935, the relators were served with written notice that on July 9, at ten o'clock a. m., the board would consider the reassessment of relators' property. In that session of the board, the valuation of the property was increased to fifty thousand dollars. That action was illegal, because service on the relators was not completed in time to give the necessary statutory five days' notice. On the same date, the board adjourned its 1935 session.

On July 21, 1935, which was subsequent to the expiration of the statutory two-weeks' period of the board of equalization, the board petitioned the state tax commission to reconvene the Yakima county board of equalization for the purpose of considering and acting upon the question of raising the assessed valuation of the improvements upon the property in question. On July 23, 1935, the state tax commission entered an order reconvening the county board of equalization. The reconvened meeting of the county board of equalization could not be held at the time ordered by the state tax commission because of the issuance by the trial court of an alternative writ of prohibition. Subsequently, the respondents' demurrer to the amended application and affidavit was sustained. Thereafter, a like petition of the county board of equal-

ization resulted in an order by the state tax commission reconvening the county board of equalization,

". . . for the sole purpose of considering and acting upon the matter of increasing the assessed valuation of the improvements upon the above described property to such figure as in its judgment and discretion may be deemed proper."

Pursuant to that order of the state tax commission reconvening it, the county board of equalization met August 24, 1935, and raised the assessed valuation of the hotel property from ten thousand to fifty thousand dollars.

We are first confronted with a motion by respondents to dismiss the appeal upon the ground that all questions involved in the cause have become moot by virtue of the payment, without protest, by appellant Yakima Amusement Company of all of the taxes, the assessment of which the appellants attack in this action.

The first half of the 1935 taxes was paid without protest May 28, 1936, which was nine months after the commencement of this action but prior to the date (September 26, 1936) of the entry of the judgment of dismissal. On November 27, 1936, which was subsequent to the entry of the judgment of dismissal, an employee of the Yakima Amusement Company paid, by check dated November 23, 1936, to the treasurer of Yakima county the second half of the taxes assessed against appellants' property. The following typewritten notation appears on the face of the second check:

"Last ½ 1935 taxes Lots 1, 2, 3, 4 Block 91, Yakima. Paid under protest."

It is a condition precedent to the maintenance of an action to recover the amount of alleged excessive or unlawful taxes paid by a taxpayer that the payment be made under written protest setting forth all of the

grounds upon which such tax is claimed to be unlawful or excessive.

"In all cases of the levy of taxes for public revenue which are deemed unlawful or excessive by the person, firm or corporation whose property is taxed, or from whom such tax is demanded or enforced, such person, firm or corporation may pay such tax or any part thereof deemed unlawful, under written protest setting forth all of the grounds upon which such tax is claimed to be unlawful or excessive; and thereupon the person, firm or corporation so paying, or his or its legal representatives or assigns, may bring an action in the superior court against the state, county or municipality by whose officers the same was collected, to recover such tax, or any portion thereof, so paid under protest: . . ." Laws of 1931, chapter 62, § 2, p. 201; Rem. Rev. Stat., § 11315-2 [P. C. § 6882-190].

It is argued by appellants that, by the original complaint in this proceeding, the county treasurer was apprised at the time of its service upon him of the grounds upon which the tax was claimed to be unlawful. Clearly, such information does not constitute the "written protest" which is a condition precedent to the maintenance of an action to recover illegal taxes.

It has been held, however, that, when the questions involved are of great public interest, and the real merits of the controversy are unsettled, the court will consider the questions involved, notwithstanding the fact that they have become moot. *O'Laughlin v. Carlson,* 30 N. D. 213, 152 N. W. 675.

In the case cited, the defendant county auditor appealed from a judgment in a mandamus proceeding commanding the auditor to receive and file the nominating petition of the plaintiff and cause the plaintiff's name to be printed on the official ballot to be used at the general election on November 3, 1914. In the

opinion filed April 16, 1915 (which was subsequent to the election), the supreme court of North Dakota said:

"The sole question presented by this appeal is whether or not chapter 123 of the Session Laws of 1913 (§ 3264, Compiled Laws), is constitutional. The contention of the relator is that this law is unconstitutional, and that for that reason the term of office of said Johnson as county commissioner of the second commissioner district would be for the period of four years only, from and after the first Monday in January, 1915. The defendant, on the other hand, contends that this law is constitutional, and hence that the term of office of Johnson as commissioner does not expire until January 1, 1917, and hence necessarily no commissioner could be elected for this district at the election to be held on November 3, 1914. As the election has been held, the question of whether or not the judgment appealed from ought to be affirmed or reversed is to some extent moot, but as that decision directly involved the duration of the term of office of R. D. Johnson, the then incumbent, and also involved the constitutionality of the act in question, it is obvious that the real question presented is of great public interest, and still remains unsettled, and under such circumstances this court will determine the real questions at issue. *State ex rel. Dakota Trust Co. v. Stutsman,* 24 N. D. 68, 139 N. W. 83, Ann. Cas. 1914D, 776. See also *Re Madden,* 148 N. Y. 136, 42 N. E. 534."

This is not an action for the recovery of illegal taxes. In the proceeding instituted to restrain the county board of equalization from proceeding in the matter of increasing the assessed valuation of their property, the appellants sought, under the provisions of chapter 113, Laws 1935, p. 305 (Rem. Rev. Stat. (Sup.), § 784-1 [P. C. § 8108-21] *et seq.*), a declaration, in the form of a judgment, whether, as applied to the facts in the case presented, subd. 5, § 1, chapter 15, Laws 1931, p. 57, is valid.

In *Acme Finance Co. v. Huse, ante* p. 96, 73 P. (2d) 341, we held that chapter 113, Laws of 1935, p. 305,

authorizes the rendition of declaratory judgments, and that such a judgment may be procured before a right has been violated and though no consequential relief is given or sought. Patently, the case at bar is a proper one for a declaratory judgment as to the validity of the section of the statute challenged by the appellants. The motion to dismiss the appeal is denied.

Counsel for appellants contend that the county board of equalization has no authority other than that conferred upon it by Rem. Rev. Stat., § 11220. It is insisted that the time during which the board may act is limited by the statute, that the power of the board ceases with the expiration of that period and any changes in the assessment roll made afterwards are illegal; that the reassessment of August 24th was long after the time specified in the statute when the records of corrected values may be filed and forwarded to the state board of equalization.

The powers and duties of the county board of equalization are, as we held in *State ex rel. Milwaukee Land Co. v. Taylor*, 171 Wash. 352, 17 P. (2d) 884, set forth in Rem. Rev. Stat., § 11220. The powers of each board (county and state) of equalization, are defined and limited.

"The authority of the one board is essentially different from the authority of the other. The language throughout the statute reflects the legislative recognition of the home-rule principle, the right secured by the constitution to counties, towns, cities, and other municipal corporations, to govern themselves in the matter of revising or equalizing the taxes imposed upon property within the counties, towns, cities and other municipal corporations. The authority of each board of equalization within its own sphere is supreme." *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619.

We held in *State ex rel. State Tax Commission v. Redd, supra,* that the state tax commission can neither

assess nor reassess property within the limits of a county, for county purposes; that only the local authorities have the power to list and value property within the county for local tax purposes, and "no other authorities can legally relist and revalue that property for local tax purposes."

The pertinent portion of Rem. Rev. Stat., § 11220, reads as follows:

"Having corrected the real and personal assessment-rolls in accordance with the changes made by the said county board of equalization, he shall make duplicate abstracts of such corrected values, one copy of which shall be retained in his office, and one copy forwarded to the state board of equalization on or before the first Monday in August next following the meeting of the county board of equalization.

"The county board of equalization shall meet on the first Monday in July and may continue in session and adjourn from time to time during two weeks, but shall remain in session not less than three days. . . .

"Boards of county commissioners as such shall at no time have any authority to change the valuation of the property of any person or to release or commute in whole or in part the taxes due on the property. . . ."

Counsel for respondents do not deny that, when the county board of equalization adjourned July 9, 1935, it thereby became *functus officio* and could not thereafter, at any time or in any manner, consider or alter the assessment on any property in Yakima county for the year 1935 if Rem. Rev. Stat., § 11220, were the only legislative expression upon the subject. However, urge counsel for respondents, the legislature provided, by Rem. Rev. Stat., § 11091, for the reconvening of a county board of equalization. The pertinent portion of that section reads as follows:

"The tax commission shall have the power to direct and to order any county or township board of equaliza-

tion to raise or lower the valuation of any taxable property and to add such property to the assessment list. The tax commission may require any such board of equalization to reconvene after its adjournment for the purpose of performing any order or requirement made by the tax commission and may make such orders as it shall determine to be just and necessary. If such board of equalization shall fail or refuse forthwith to comply with any such order or requirement of the tax commission, the tax commission shall have the power to make such correction or change in the assessment list, and such corrections and changes shall be a part of the record of the proceedings of the said board of equalization: Provided, That in all cases where the tax commission shall raise the valuation of any property or add property to the assessment list, it shall give notice either for the same time and in the same manner as is now required in like cases of county boards of equalization, . . ."

Respondents do not challenge the rule, to which we are committed, that the state tax commission is without authority to assess or reassess property within the limits of a county for county purposes. They argue that the state tax commission did not attempt to fix the valuation of the property, but merely made the order which, according to Rem. Rev. Stat., § 11091, enabled the county board of equalization to meet in reconvened session so that it could consider and raise the assessed valuation of the property.

The manifest purpose of the challenged section of the statute quoted above is to authorize the state tax commission to reconvene the county board of equalization to carry out an order of the state tax commission to reassess property. The state tax commission has not the power, despite Rem. Rev. Stat., § 11091, in view of *State ex rel. State Tax Commission v. Redd, supra,* to reconvene the county board of equalization to carry out a specific direction of the state tax commission to

reassess property within the limits of a county for county purposes.

The state tax commission may not by such procedure—as was the purpose and would be the result of the order reconvening the county board—reassess property within the limits of a county for county purposes. Such attempted reconvening is not within the purview of the statute. The county board of equalization was without power to reconvene itself after adjournment. It could not, by petition to the state tax commission, reconvene on order of the latter in connection with any reassessment or new assessment of taxes for 1935.

A contrary holding would be in furtherance of that which we condemned in *State ex rel. State Tax Commission v. Redd, supra.* It would not only countenance but authorize a disregard of the home-rule principle, a right secured by the constitution to counties and other municipal corporations to govern themselves in the matter of assessments and reassessments for local purposes. The state tax commission had no authority to reconvene the county board of equalization; therefore, the latter was without jurisdiction to act pursuant to said attempted reconvening.

The judgment is reversed.

STEINERT, C. J., HOLCOMB, GERAGHTY, and ROBINSON, JJ., concur.

BLAKE, J. (dissenting)—This decision seriously impairs the taxing power of the state in that it destroys the effectiveness of chapter 15, Laws of 1931, p. 55 (Rem. Rev. Stat., § 11091 [P. C. § 6874-5]), an act wholly designed to coordinate state and county taxing agencies for the purpose of bringing about equality and uniformity in taxation, not only between individuals, but between the various counties. Whatever may be

said of the act in certain particulars, as applied to the facts of the present case it does not offend the constitutional inhibition against the levy of taxes by the state for local purposes, even as that clause has been applied in *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619.

For here there is no attempt by the tax commission to fix the valuation of relators' property. It has only (and that at the request of the county agency) authorized the board of equalization to reconvene to consider the advisability of raising the valuation of relators' property, which the board attempted to do at its regular session but failed because of insufficient notice to relators. Surely, no one would challenge the power of the legislature to directly authorize boards of equalization to reconvene and do that which they have the power to do in regular session. Making the right to reconvene contingent upon consent of the tax commission, to my mind, affords no ground for holding that, in giving its consent, the tax commission does thereby "impose taxes" upon a county "for . . . county purposes."

I dissent.

MAIN, BEALS, and SIMPSON, JJ., concur with BLAKE, J.